**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SALLY A. MATSUDA, Trustee of the
Sally A. Matsuda Self-Trusteed
Trust dated October 15, 1993;
RALPH JAMES MITCHELL; LUCY
MITCHELL; NOOSHA FESHARAKI;
EARL KIDDER; JEENIE MARIE
KIDDER; JAMES RAPISARDA;
JONATHAN VON BRANA; THOMAS
PRESTON; LOREN HOHMAN; HERBERT
CAPLAN; ELENA PECILE, Co-Trustee
of the Herbert Caplan and Elena
V. Pecile Trust dated March 27,
2003; WILMA PARKER, Trustee of
the Wilma I. Parker Trust dated
March 16, 1989 as amended; TROY
WILLIAMS; LARRY WEISNER;
DELORES WEISNER; MARIANNE
MARION JAEGER; RICHARD JOHNSON;
WILLIAM GARRETT FUSON; KANG
YUK LEE; SUK JA LEE; CLAUDE
ROTHE, Trustee of the Claude R.
Rothe Living Trust dated March
26, 1998; ALVIN OLSON, Trustee
under Alvin R. Olson Revocable
Trust Agreement dated July 20,
1998;

No. 06-15337

D.C. No.
CV-05-00125-DAE

OPINION

NATALIA INDRASARI; WARREN
SWEET, Trustee of the Sweet John
Revocable Trust dated June 21,
1991; RHEBA ALICE SWEET; ROBERT
MEHRING; AYUMI WATANABE
MEHRING; ARNOLD FLEMMINGS;
MARIANA FLEMMINGS, Co-Trustee
of the Arnold Theodore
Flemmings and Mariana
Flemmings Revocable Living
Trust dated December 6, 1999;
MELVIN TAKEO MATSUOKA; DELWIN
SCHNEIDER; KATHERINE SCHNEIDER,
Trustee under the Delwin Byron
Schneider and Katherine Louise
Schneider Family Trust dated
October 14, 1996; RONALD
SILVERMAN; FARHAD SIMYAR; FRANK
WINSTON KERN,
              *Plaintiffs-Appellants,*

            v.

CITY AND COUNTY OF HONOLULU,
              *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
November 2, 2007—Honolulu, Hawaii

Filed January 14, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

David A. Nakashima, Alston Hunt Floyd & Ing, Honolulu, Hawaii, argued the cause for the plaintiffs-appellants, and filed briefs; Lerisa L. Heroldt and Clyde J. Wadsworth, Alston Hunt Floyd & Ing, Honolulu, Hawaii, were on the briefs.

Don S. Kitaoka, Deputy Corporation Counsel, City and County of Honlulu, Hawaii, argued the cause for the

defendant-appellee and filed a brief; Carrie K.S. Okinaga, Corporation Counsel, Paul M. Iguchi and Derek T. Mayeshiro, Deputy Corporation Counsels, City and County of Honolulu, Hawaii, were on the briefs.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to determine whether the United States Constitution imposes any limit on the City of Honolulu's power to repudiate a contract to convey property to a private citizen in connection with its leasehold conversion program.

## I

## A

In 1991, the City and County of Honolulu (the "City") enacted an ordinance, later codified at Chapter 38 of the Revised Ordinances of Honolulu ("Chapter 38"), which created a mechanism allowing owners of leasehold interests in condominium units to convert their leasehold interests into fee interests by using the City's power of eminent domain.[1] We upheld the constitutionality of Chapter 38 in *Richardson v. City and County of Honolulu*, 124 F.3d 1150 (9th Cir. 1995). As we explained in that case, Chapter 38 was a response to Hawaii's long history of feudal land ownership, which survived well after American acquisition. *Id.* at 1153. At the time of Chapter 38's enactment, a small handful of landowners owned the vast majority of land in the State. Despite the efforts of Hawaii's leaders to divide these large Hawaiian land estates, the system persisted, driving the price of land in Hawaii to exorbitant heights. Taking advantage of this status

---

[1]The Hawaii Legislature has delegated the power of eminent domain to local bodies such as the City. Haw. Rev. Stat. § 46-1.5(6) (2006).

quo, Hawaiian landowners rarely sold their estates. Instead, they frequently leased their land for long terms, often to developers who would construct condominiums on the property and then sell the units subject to the ground lease. *Id.* at 1153-54.

To break up this pattern and to increase the opportunity for land ownership, the City enacted Chapter 38. Chapter 38 provided that when a sufficient number of condominium unit owners within a condominium complex applied, the City would take steps to acquire the property on which their condominium complex was built from the landowner by power of eminent domain. The City would then convey each condominium unit and the appurtenant land to the lessee-applicants in fee simple.

Specifically, Chapter 38 required an application from a minimum of either 25 condominium owners within a development or the owners of at least 50% of the condominium units within the development to trigger its condemnation mechanism. Revised Ordinances of Honolulu § 38-2.2(a)(1). Upon such application, the City's Department of Housing and Community Development (the "Department") would hold a duly-noticed public hearing to determine whether the acquisition of the property though eminent domain would "effectuate public purposes" as defined in Chapter 38. *Id.* § 38-2.2(a)(2). If the Department issued a finding answering that question in the affirmative, the Department would initiate condemnation proceedings unless the landowner agreed to convey the fee interests to the lessee-applicants directly. *Id.* Finally, before condemnation could begin, the City Council was required to adopt a resolution approving the exercise of eminent domain and appropriating the necessary funds to pay just compensation. *Id.*; City & County of Honolulu Rules for Residential Condominium, Cooperative and Planned Development Leasehold Conversion § 2-12.

B

Sally Matsuda and the other appellants in this suit (the "Lessees") hold leasehold interests in condominium units at the Discovery Bay condominium complex in Honolulu, Hawaii. The Lessees applied to the City under Chapter 38 to convert their leasehold interests into fee simple interests in their units and the appurtenant land. Upon receipt of the Lessees' applications, the City entered into individual written contracts with each Lessee in which the Lessee promised to pay the City $1,000 in exchange for the City's promise that, upon its successful acquisition of the property at Discovery Bay, the City would convey a fee interest to each Lessee in her unit and the appurtenant land. Each contract was expressly conditioned on the City's successful acquisition of the property pursuant to Chapter 38, and each party agreed to use its best efforts to effectuate the acquisition.

On July 3, 2004, after a duly-noticed public hearing, the Department announced its finding that condemnation of the property at Discovery Bay would serve the public purpose required by Chapter 38. A few months later, in late October or early November, the Lessees received written notice of their final approval to proceed with Chapter 38's leasehold conversion procedure. Finally, on November 24, the Department designated the Lessees' leasehold interests in the real property and other common elements at Discovery Bay for acquisition through the City's exercise of eminent domain, finding that the Lessees had satisfied Chapter 38's numerosity requirement, that the condemnation would effectuate the public purpose of Chapter 38, and that no agreement for a voluntary sale by the landowner had been made.

As the Lessees' application was progressing, however, the Honolulu City Council began considering a proposed bill that would repeal Chapter 38. As the proposed bill's statement of purpose explained, some members of the Council had determined that Chapter 38's goal of "provid[ing] affordable hous-

ing" and "strengthen[ing] the economy through fee ownership" had largely been satisfied, rendering the provision unnecessary.

On November 10, 2004, a councilmember introduced a measure seeking a City Council resolution to approve the initiation of condemnation proceedings at Discovery Bay. Even though the Lessees' applications had met all the requirements of Chapter 38, the Council deferred consideration of the resolution pending the possible repeal of Chapter 38.

On January 26, 2005, the Council enacted Ordinance 05-001, repealing Chapter 38. The ordinance permitted any condemnation proceeding approved by City Council resolution before the effective date of the repeal to continue, but because the City Council never took such a step to approve the condemnation of the property at Discovery Bay, the project failed.

The Lessees filed suit against the City in the district court, arguing that Ordinance 05-001 violated the Contracts Clause, the Fourteenth Amendment's Due Process Clause, and 42 U.S.C. § 1983, and seeking declaratory and injunctive relief.[2] Shortly thereafter, the Lessees moved for a preliminary injunction to enjoin the implementation of the ordinance, which the district court denied. The Lessees then filed a motion for summary judgment, which the district court denied as well, granting summary judgment in favor of the City instead. *Matsuda v. City and County of Honolulu*, 378 F. Supp. 2d 1249 (D. Haw. 2005). The district court concluded that the Lessees could not challenge Ordinance 05-001 under the Contracts Clause because the Lessees' contracts with the City were unenforceable. It reasoned that the "reserved powers" doctrine precluded the City from entering into the con-

---

[2]The Lessees also argued that the ordinance was an unconstitutional bill of attainder, U.S. Const. art. I, § 10, a claim they do not raise on this appeal.

tracts because they purported to limit the City's discretion over the use of its eminent domain power, a power which has been labeled an "essential attribute of sovereignty." *Id.* at 1255 (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 888 (1996)).

The Lessees timely appeal.

## II

We begin with the Lessees' claim that Ordinance 05-001 impaired their contracts with the City in violation of the Contracts Clause of the United States Constitution. The Contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. Despite the sweeping terms of its literal text, the Supreme Court has construed this prohibition narrowly in order to ensure that local governments retain the flexibility to exercise their police powers effectively. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978); *El Paso v. Simmons*, 379 U.S. 497 (1965); *Home Bldg. & Loan Ass'n. v. Blaisdell*, 290 U.S. 398 (1934). Nevertheless, when a state's action interferes with its own contractual obligations, as opposed to mere private contracts, the Court has made clear that we are to examine the state's conduct with a higher level of scrutiny.[3] *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 20-21 (1977).

Under this heightened scrutiny test, first announced in *U.S. Trust*, we consider (1) "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship," *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983) (citations and internal quotation marks omitted); (2) whether the state law is justified by

---

[3]The Contracts Clause applies to a municipality such as the City. *See Rui One Corp. v. City of Berkeley*, 371 F.3d 1137, 1141, 1147 (9th Cir. 2003).

a "significant and legitimate public purpose," *id.*; and (3) whether the impairment resulting from the law is both "reasonable and necessary to fulfill [such] public purpose," *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889-90 (9th Cir. 2003) (per curiam) (citations and internal quotation marks omitted).

In the case before us, however, the district court did not apply the *U.S. Trust* test to the Lessees' Contracts Clause claim, concluding instead that heightened scrutiny was not appropriate because the reserved powers doctrine rendered the Lessees' contracts with the City void *ab initio*. *Matsuda*, 378 F. Supp. 2d at 1255.

## A

**[1]** The reserved powers doctrine is a label the Supreme Court has applied to describe the uncontroversial proposition that a state may not enter a contract that "surrenders an essential attribute of its sovereignty" and that, as a consequence, the Contracts Clause may not be used to compel a state to adhere to a contract that purports to achieve such a result. *U.S. Trust*, 431 U.S. at 23. Although a complete list of the essential attributes of sovereignty which may not be contracted away has never been established, it is well-settled that "a State cannot be bound to a contract forbidding the exercise of its police power," *U.S. Trust*, 431 U.S. at 24 n.21 (citing *Stone v. Mississippi*, 101 U.S. 814, 817 (1880)), and that "a State cannot contract away [its] power of eminent domain," *id.* (citing *West River Bridge Co. v. Dix*, 47 U.S. 507 (1848)).

**[2]** Despite this, most contracts in which a state agrees to limit its power to act in the future will not be subject to prohibition. *Id.* at 24-25. Indeed, as "the Court has regularly held," a state will be bound by contracts that limit the use of its taxing and spending powers, even though such contracts limit the state's future exercise of discretion in material ways. *Id.*

In turning to the question of whether the City's contracts with the Lessees in this particular case are subject to the reserved powers doctrine, we note that the Supreme Court has explained that our initial task is to determine whether the state had the "power to create irrevocable contract rights in the first place." *Id.* at 23. The City argues that it did not, because these contracts purport to limit its discretion over its essential power of domain. The Supreme Court has twice decided cases in which a Contracts Clause claim implicated a state's power of eminent domain, as the City argues has occurred here, and so, we examine those precedents.

In *West River Bridge*, a corporation received a charter from the State of Vermont which entitled it to operate a toll bridge across a river and to collect tolls from passengers. 47 U.S. at 530. Several years later, the State initiated condemnation proceedings which extinguished the corporation's franchise and converted the bridge into a free public highway. *Id.* at 531. Just compensation was assessed. *Id.* The corporation asserted a Contracts Clause claim, which the Court rejected, concluding that the Constitution did not prohibit the State from using its eminent domain power, even where the property taken was previously conveyed by the State. *Id.* at 532-33. As the Court explained, all contracts, whether they are between a state and a private actor or private actors alone, are made subject to the understanding that the state may one day take the subject property for public use, provided that just compensation is paid. *Id.*

A similar situation arose in *Contributors to Pennsylvania Hospital v. City of Philadelphia*, 245 U.S. 20 (1917). In that case, a hospital entered a contract with the State of Pennsylvania which resulted in a state statute specifically forbidding the State from opening any street or alley on hospital grounds without the hospital's consent. *Id.* at 21. Several years later, however, the City of Philadelphia, through the power conferred upon it by the State, initiated condemnation proceedings against the hospital's land for the purpose of opening a

public street. *Id.* at 21-22. The hospital asserted a Contracts Clause claim, which the Court again rejected, concluding that, regardless of Pennsylvania's promise to the hospital, states lack the power to divest themselves of their right to perform "essential governmental duties" such as exercising the power of eminent domain when a public need so requires. *Id.* at 23-24.

**[3]** *West River Bridge* and *Contributors to Pennsylvania Hospital* stand for the proposition that the Contracts Clause cannot be used to bind a state to a contract that prevents it from exercising its power of eminent domain. Yet such facts have not been alleged here. In this case, the Lessees have not accused the City of impairing its contracts with them by exercising its power of eminent domain to take for public use property which it previously conveyed to the Lessees. Instead, the Lessees accuse the City of reneging on its contractual promise to use its best efforts to effectuate a condemnation proceeding against the property at Discovery Bay and, if successful, to convey the property to the Lessees. Accordingly, we find the Lessees' claim to be distinct from those Contracts Clause claims to which the Supreme Court has applied the reserved powers doctrine in the past.

The district court held otherwise, concluding that the contracts at issue required the City to exercise its eminent domain power and that "[a] contract *requiring* a sovereign to exercise the power [of eminent domain] is just as limiting as a contract prohibiting it from doing so." *Matsuda*, 378 F. Supp. 2d at 1257 (emphasis added).[4] We disagree.

---

[4]The district court drew support for this conclusion from *Kelo v. City of New London*, 545 U.S. 469 (2005). As the district court noted, *Kelo* emphasized that states remain free to impose limitations on their own exercise of any power, including the takings power, stricter than the limitations required by the United States Constitution. *Id.* at 489. Yet *Kelo* provides no guidance regarding the question presented here: whether a state actor's contract to convey property if successfully acquired through eminent domain is subject to *U.S. Trust*'s heightened scrutiny analysis or is void on its face.

As an initial matter, the City's contracts with the Lessees did not expressly require the City to condemn the property at Discovery Bay. As discussed above, Chapter 38 imposed several requirements for a successful condemnation which were beyond the City's power to control, and the City only agreed to use its best efforts to achieve those results. Thus, if an insufficient number of condominium owners applied to the City or if the public hearing held by the Department failed to produce a finding that condemnation would serve a valid public purpose, the City would not have been obligated under the contracts to proceed with the condemnation.

**[4]** More importantly, however, the City's contracts with the Lessees do not restrict its ability to exercise its eminent domain power in any way. The contracts reflect the City's voluntary undertaking to use its best efforts to effect a condemnation of the property at Discovery Bay and to convey that property to the Lessees if successful. The contracts do not purport to require the City to refrain from the exercise of any sovereign power, including the power of eminent domain.[5] Instead, the contracts reflect the City's decision to initiate proceedings to exercise its power of eminent domain over the property at Discovery Bay, and to convey the property to the Lessees if successful. This is not the type of agreement to which the reserved powers doctrine applies and, accordingly, we conclude that *U.S. Trust*'s heightened scrutiny test provides the mandatory analysis.[6]

---

[5]Indeed, there is no provision in the contracts that purports to prevent the City from conveying the property to the Lessees and later taking the property for public use. Thus, these contracts contain none of the same elements the Court found unenforceable in *West River Bridge* and *Contributors to Pennsylvania Hospital*.

[6]Indeed, as a survey of our Contracts Clause jurisprudence indicates, Ordinance 05-001 is quite analogous to the state actions this court and the Supreme Court have assessed under *U.S. Trust*. *See U.S. Trust*, 431 U.S. at 1518 (holding that concurrent and parallel New York and New Jersey statutes that retroactively repealed a covenant between the States and

B

**[5]** Turning to the *U.S. Trust* test, our first inquiry is whether Ordinance 05-001 "operated as a substantial impairment of a contractual relationship." *Cayetano*, 183 F.3d at 1101 (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation marks omitted)). The Supreme Court has subdivided this inquiry into three separate questions: (1) "whether there is a contractual relationship"; (2) "whether a change in law impairs that contractual relationship"; and (3) "whether the impairment is substantial." *Seltzer v. Cochrane*, 104 F.3d 234, 236 (9th Cir. 1996) (quoting *Gen. Motors Corp.*, 503 U.S. at 181).

**[6]** The parties do not dispute that a contractual relationship existed prior to the enactment of Ordinance 05-001. Turning to the questions of whether the ordinance impaired that contractual relationship and whether such impairment was substantial, the parties are in disagreement and the record is not fully developed.[7] Whether there was a substantial impairment is precisely the question *U.S. Trust* instructed the district court to answer in the first step of its analysis. Because the district court determined that the reserved powers doctrine rendered

---

bondholders in the state-owned Port Authority was subject to Contracts Clause analysis); *Winstar*, 518 U.S. at 888-89 (concluding that a congressional statute that prohibited federal entities from complying with their contracts to provide various financial institutions with certain accounting treatment was subject to the Contracts Clause and that the reserved powers doctrine did not relieve the federal government from liability); *Cayetano*, 336 F.3d at 1099 (determining that a Hawaii statute that repealed the payroll system for state employees agreed to under a collective bargaining agreement and implemented a new system in its place was subject to a Contracts Clause claim).

[7]The contracts were "expressly conditioned" upon the City's successful acquisition of the property, but it is unclear whether the repeal of Chapter 38 under a mechanism such as Ordinance 05-001 was contemplated under the agreement, although as the City conceded at oral argument, the City was, at minimum, under an implied duty of good faith and fair dealing.

the City's contracts unenforceable, it never reached this threshold question. We believe this analysis is most appropriate for the district court to engage in on remand as a matter of first impression.

**[7]** Accordingly, we vacate the district court's grant of summary judgment to City on the Lessees' Contracts Clause claim and remand to allow the district court to consider the Lessees' claim under the framework set forth in *U.S. Trust*.

### III

**[8]** Having addressed the Lessees' Contracts Clause claim, we next turn to their contention that Ordinance 05-001 violates the Due Process Clause of the Fourteenth Amendment. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. We have held that contracts such as the Lessees' may give rise to property interests protected by this provision. *See Brewster v. Bd. of Educ.*, 149 F.3d 971, 982-83 (9th Cir. 1998). Further, the Due Process Clause confers both procedural and substantive rights. *Richardson*, 124 F.3d at 1162 (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)). In evaluating a substantive due process claim such as the Lessees', we have determined that state action which "neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights" will violate substantive due process only if the action is "not rationally related to a legitimate governmental purpose." *Id.* (quoting *Munoz v. Sullivan*, 930 F.2d 1400, 1404 (9th Cir. 1991)).

**[9]** The burden this places on the plaintiff is "extremely high." *Id.* (citing *Del Monte Dunes v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990)). To prove that the City's enactment of Ordinance 05-001 violated their substantive due process rights, the Lessees must demonstrate first that their contracts were the type of property the Due Process Clause

protects and, second, that the City deprived them of their rights under the contracts in a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *Salerno*, 481 U.S. at 746) (internal quotation marks omitted).

**[10]** The district court did not evaluate the Lessees' claim under this framework because it determined that the reserved powers doctrine relieved the City of its obligations and left the Lessees without any enforceable contractual rights that could be protected by the Due Process Clause. *Matsuda*, 378 F. Supp. at 1258. Because we have already concluded that the district court's application of the reserved powers doctrine was in error, we remand to the district court to reconsider the Lessees' due process claim once it has determined whether the Lessees had any contractual rights that could give rise to a protected property interest.

We express no opinion as to whether any property interests potentially arising from the Lessees' contracts could meet the "exceedingly high" burden our Due Process jurisprudence imposes. Furthermore, we express no opinion as to whether our decision in *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en banc), precludes the Lessees from asserting a substantive due process claim in this case, where the Contracts Clause provides a specific source of constitutional protection against the government conduct of which they complain. *Id.* at 1318.

IV

**[11]** Finally, we turn to the Lessees' contention that the City's alleged violations of the Contracts Clause and Due Process Clause violate § 1983. As an initial matter, we note that from the face of the Lessees' complaint and their subsequent filings in the district court, it is unclear whether they have preserved a claim for damages under § 1983 in the event the dis-

trict court determines on remand that a constitutional violation has occurred. Nevertheless, both the Contracts Clause and the Due Process Clause may give rise to a claim under § 1983. *See S. Cal. Gas Co.*, 336 F.3d at 886-87 (holding that a Contracts Clause violation may support a § 1983 claim); *Youngberg v. Romeo*, 457 U.S. 307 (1982) (recognizing a plaintiff's § 1983 claim predicated on an alleged violation of his substantive due process rights). Accordingly, because we conclude that the district court erred in applying the reserved powers doctrine to find that no constitutional violations occurred, we vacate the district court's grant of summary judgment to the City on the Lessees' § 1983 claims and remand. If the district court on remand determines that the Lessees' contractual rights survived Chapter 38's repeal, the Lessees may be able to assert a claim under § 1983 under either constitutional provision.

V

Based on the foregoing, we VACATE the district court's grant of summary judgment in favor of the City and REMAND for further proceedings. Each party shall bear its own costs on appeal.